IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA

MIDDLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL CASE |
| v | : | |
| | : | No. 4:23-CR-21 (RDP)(SGC) |
| MARCUS SPANEVELO | : | |
| _____ | : | |

MOTION FOR A 60 DAY EXTENSION
OF TIME TO ENABLE DEFENDANT TO
MAKE A MEANINGFUL PRESENTATION
TO THE DEPARTMENT OF JUSTICE

Comes now, MARCUS SPANEVELO, Defendant in the above-styled action, by and through undersigned counsel and moves this Court to extend the deadline for the United States to decide whether to seek the death penalty by sixty (60) days. In support of this Motion, Mr. Spanevelo shows as follows:

(1)

On January 25, 2023, a Grand Jury sitting in the Northen District of Alabama returned a single count indictment charging Mr. Spanevelo with kidnapping resulting in a death in violation of 18 U.S.C. §1201(a)(1).

(2)

The death penalty is a possible sentence if convicted of kidnapping resulting in death. *See* 18 U.S.C. §1201(a).

(3)

On January 26, 2023, this Court entered an order granting the government's Motion for Writ of Habeas Corpus ad Prosequendum, ordering that Mr. Spanevelo, who was then in the custody of the St. Clair County, Alabama, Sheriff's Office, to be brought before the Court for an arraignment. (Doc. 3 & 4)

(4)

Also on January 26, 2023, the Court entered an order appointing the Federal Public Defender to represent Mr. Spanevelo. (Doc. 5).

(5)

On February 9, 2023, Ms. Spanevelo was arraigned on the instant indictment.

(6)

On February 13, 2023, this Court entered an order setting deadlines for the filing of certain motions and responses, etc. (Doc. 10).

(7)

On February 16, 2023, the government filed a motion for protective order which this Court granted on March 2, 2023. (Doc. 11 & 13).

(8)

On February 27, 2023, the government filed a notice indicating it would not seek the death penalty. (Doc. 12).

(9)

On May 10, this Court granted the Defendant's Unopposed Motion to Declare the Case Complex. (Doc. 14 & 15).

(10)

The Federal Defender developed a conflict and on November 9, 2023, filed a motion to withdraw which was granted on November 13, 2023. (Doc. 24 & 27).

(11)

On November 15, 2023, attorney, Lisa Ivey was appointed and entered a notice of appearance on November 16, 2023.

(12)

On March 5, 2024, Ms. Ivey filed a motion to appoint additional counsel wherein she noted that the discovery provided to her was voluminous (in excess of 4 terabytes) and reiterated the complexity of the case. (Doc. 32).

(13)

On March 19, 2024, this Court denied, without prejudice, the motion for appointment of additional counsel.

(14)

On December 18, 2024, this Court entered an order setting Mr. Spanevelo's trial for April 28, 2025.

(15)

In mid-February, the government notified Ms. Ivey that the Department of Justice (DOJ) would review the previous administration's authorization not to seek the death penalty for capital-eligible defendants who had not commenced trial or suffered conviction.

(16)

I reviewing the authorization not to seek the death penalty against Mr. Spanevelo, and in accordance with J.M. § 9-10.130, the Attorney General's Review Committee on Capital Cases ("AGRC") invited his counsel to meet in person and present evidence and argument in mitigation.  (*See*, Doc. 49 at 1-2).

(17)

Faced with this new development, Ms. Ivey, on February 24, 2025, filed a motion for appointment of learned counsel and motion to continue.  (Doc. 49).

(18)

Undersigned counsel, Jeffrey L. Ertel, was recruited by the Defender Services' Death Penalty Resource Counsel project and agreed to serve as learned counsel if appointed by the Court.

(19)

On March 10, 2025, this Court appointed Mr. Ertel as learned counsel, continued the trial and set July 7, 2025, as the deadline for the government to determine if it would seek the death penalty. (Doc. 50).

(20)

In view of the deadline, the AGRC communicated through the local U.S. Attorney's Office to Mr. Spanevelo's attorneys that it will not delay its meeting with counsel beyond June 1, 2025, in order to ensure that it has adequate time to complete its recommendation and that other DOJ officials, including the Attorney General, have a fair opportunity to consider the case and render a careful decision.

(21)

Accordingly, the AGR offered to meet with counsel on May 19, 2025.

(22)

For a number of reasons, the current July 7, 2025, deadline and accompanying requirements make it impossible for counsel for Mr. Spanevelo to make a meaningful presentation to the Capital Review Committee. First, undersigned counsel, Ertel only just received the discovery last Wednesday, March 19, 2025. As previously noted, the discovery is voluminous (in excess of 4 terabytes) and Mr. Ertel has only just begun his review. Second, Mr. Ertel is also counsel of record in *Mendoza v. Director, Texas Dept. Crim. Justice,* No. 5:09-CV-86 (E.D. Texas). Mr.

Sandoval is a death-sentenced inmate in Texas and Mr. Ertel has been appointed to represent him in clemency proceedings. Mr. Mendoza has an execution date of April 23, 2025. As the Court can imagine, a considerable amount of Mr. Ertel's time between now and April 23, will be dedicated to Mr. Mendoza's case. Third, Mr. Ertel and his family have non-refundable tickets and obligations for a two-week vacation in Italy from May 9 to May 23, 2025. Fourth, and perhaps most importantly, six weeks (assuming the presentation was due May 25, 2025), is insufficient time to make a meaningful presentation.

## ARGUMENT AND AUTHORITY

### A.   Federal Capital Litigation is Extremely Complex

Capital prosecutions are inherently complex, as numerous courts have noted. *See, e.g., United States v. Mathis*, 96 F.3d 1577 (11th Cir. 1996) (affirming trial continuance under Speedy Trial Act based, among other reasons, on the prosecutor's wish for reasonable time to prepare a superseding indictment and to obtain approval to seek the death penalty.); *United States v. Murillo*, 288 F.3d 1126, 1133 (9th Cir. 2002) ("We join our sister circuit in holding that the death penalty consideration process is a valid reason to grant an ends of justice continuance."); *United States v. Reddick*, No. 09-MJ-2001, 2010 WL 5253527, *5 (D.N.J. Dec. 17, 2010) ("The decision whether to seek the death penalty is not straightforward. Given the implications for defendant, it is unreasonable to expect adequate preparation for

pretrial proceedings or for the trial itself within the time periods in the Speedy Trial Act."); *United States v. Bran*, No. 3:12CR131, 2012 WL 4507903, *2 (E.D. Va. Sep. 28, 2012) (finding a death penalty case complex as a result of the nature of the prosecution).

Two attorneys, "at least 1 of whom shall be learned in the law applicable to capital cases", are statutorily permitted in every federal death penalty case under 18 U.S.C. § 3005 because capital litigation is very complicated and very different from other criminal cases. See *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976) ("[T]he penalty of death is qualitatively different from a sentence of imprisonment, however long. Death, in its finality, differs more from life imprisonment than a 100-year term differs from one of only a year or two. Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case."). In referring to "justice" in the context of capital punishment, the *Woodson* opinion explains the Eighth Amendment implications:

> This Court has previously recognized that "(f)or the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender." *Pennsylvania ex rel. Sullivan v. Ashe*, 302 U.S. 51, 55, 58 S.Ct. 59, 61, 82 L.Ed. 43 (1937).
>
> Consideration of both the offender and the offense in order to arrive at a just and appropriate sentence has been viewed as a

> progressive and humanizing development. See *Williams v. New York*, 337 U.S., at 247-249, 69 S.Ct., at 1083-1084; *Furman v. Georgia*, 408 U.S., at 402-403, 92 S.Ct., at 2810- 2811 (Burger, C. J., dissenting). While the prevailing practice of individualizing sentencing determinations generally reflects simply enlightened policy rather than a constitutional imperative, we believe that in capital cases the fundamental respect for humanity underlying the Eighth Amendment, see *Trop v. Dulles*, 356 U.S., at 100, 78 S.Ct., at 597 (plurality opinion), requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death.

*Woodson v. North Carolina*, 428 U.S. 280, 304 (1976).

### B.   The Authorization Process

The *Justice Manual* sets out the procedure to be followed by any United States Attorney prosecuting a capital case. *See* J.M. § 9-10.010 *et. seq*. In particular, the protocol states:

> In any case in which the (1) United States Attorney or Assistant Attorney General recommends that the Attorney General authorize seeking seek the death penalty or (2) two ore more members of the Capital Review Committee request a Committee conference . . . a Capital Case Section attorney will confer with representatives of the United States Attorney's Office or Department component to establish a date and time for the Capital Review Committee to meet with defense counsel and representatives of the United States Attorney's office or Department component to consider the case.

(*Id*. at 9-10-130). After hearing from the defense, the Capital Review Committee will independently determine whether it believes a death sentence should be pursued and make a recommendation to the Attorney General. *Id*.

The capital case protocol was specifically enacted to "allow proper individualized consideration of the appropriate factors relevant to each case." Specifically, the protocol states:

> The review of cases under this Chapter culminates in a decision to seek, or not to seek, the death penalty against an individual defendant. Each such decision must be based upon the facts and law applicable to the case and be set within a framework of consistent and even-handed national application of Federal capital sentencing laws. Arbitrary or impermissible facts – such as a defendant's race, ethnicity or religion – will not inform any stage of the decision-making process. The overriding goal of the review process is to allow proper individualized consideration of the appropriate factors relevant to each case.

(J.M. § 9-10-030).

### 1. Counsel Must Be Given Adequate Time to Investigate

Counsel in capital cases are ethically[1] and constitutionally required to conduct a thorough and exhaustive investigation of the alleged crime and the entire background of the accused in order to locate, develop and meaningfully present all relevant considerations to persuade those involved with the prosecution and the sentencing that the death penalty should not be authorized or imposed. One crucial

---

[1] See, e.g., *American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases* (2003), Commentary to Guideline 10.2 ("once a client is detained under circumstances in which the death penalty is legally possible, counsel should proceed as if it will be sought … Counsel must continue to treat the case as capital "until the imposition of the death penalty is no longer a legal possibility").

area of investigation involves the finding of "mitigation," this is a term that has a broad umbrella and a "low threshold" to be deemed relevant. Counsel are required to fully investigate all known sources that could produce mitigation and/or decrease the weight of aggravating considerations. *See Sears v. Upton*, 561 U.S. 945 (2009), *Porter v. McCollum*, 558 U.S. 30 (2009) *Williams v. Taylor*, 529 U.S. 362 (1999), *Wiggins v. Smith*, 539 U.S. 510 (2003), and *Rompilla v. Beard*, 545 U.S. 374 (2005),.

The United States has to date provided over 4 terabytes of discovery that must be reviewed and analyzed. Learned counsel, the only member of the defense team who has participated in the DOJ's authorization process, just received the discovery last week and has not had the time to review it in any detail. However, reviewing the discovery is critical to discern possible direct mitigation and/or to investigate leads contained therein in order to find relevant mitigation. This analysis must be conducted while bearing in mind that explanation of possible aggravating considerations used to impose the death penalty is also a component of presentation(s) under the DOJ protocol as well as at trial and/or sentencing. See, e.g., *Lockett v. Ohio*, 438 U.S. 586 (1978) (The Eighth and Fourteenth Amendments require that the sentencer must be able to give weight to aspects of the defendant's character and record and circumstances of the offense as factors that may call for a less severe penalty).

A critical factor to be considered is that Mr. Spanevelo, at the age of two, moved from the United States to Brazil. He spent the majority of his life in Brazil and the majority of his family still reside there. A competent mitigation investigation will require the defense mitigation specialist to travel to Brazil to gather relevant medical and/or psychological records, interview family members, friends, teachers and conduct other appropriate investigation. The presentation of mitigating evidence is not only critical to trial, but also an important aspect of the authorization process as the character and history of the defendant is a factor that promotes "proper individualized consideration of the appropriate factors relevant to each case." (J.M at §9-10-030).

Given that learned counsel has not had time to review the voluminous discovery coupled with the fact that counsel for Mr. Spanevelo must locate and employ a mitigation specialist who will then have to begin[2] conducting a mitigation investigation, the current deadline of July 7, does not give the defense adequate time to prepare for a presentation to the Capital Review Committee.

---

[2] Counsel does not expect a full mitigation investigation be conducted prior to making their presentation to the ACRC though they must present some information about the Defendant's character and history. The 90 days that would be available to the mitigation specialist (should the Court grant this extension) is not sufficient time to do a full-blown mitigation investigation, but it will suffice to allow the defense to present some aspects of his life and history to the Committee.

In discussions about this Motion, counsel for the United States took no position and represented that they can meet any deadline set by the Court.

WHEREFORE, this Court should extend the deadline for the government to decide whether to seek the death penalty and allow the defense adequate time to prepare their presentation to the Capital Review Committee.

Dated, this the 4th day of April, 2025

        Respectfully submitted,

        */s/ Jeffrey L. Ertel*
        JEFFREY L. ERTEL
        Ga. Bar No. 249966

        **THE MENDELSOHN ERTEL LAW GROUP, LLC**
        101 Marietta Street, NW
        Suite 3325
        Atlanta, GA 30303
        (404)885-8878
        (fax) (470) 826-1755
        jeffrey@tmelg.com

        Lisa Ivey
        Stubbs, Sills & Frey, P.C.
        1724 South Quintard Ave.
        P.O. Box 2023
        Anniston, AL 36202-2023
        ((256) 835-5050
        (fax) (256) 835-0011
        lisa@stubbssillsfrey.com

        COUNSEL FOR MR. SPANEVELO

CERTIFICATE OF SERVICE

I certify that the foregoing was electronically filed using the Court's ECF system which automatically electronically serves a copy to counsel for the Government.

Dated, this the 4th day of April, 2025.

/s/Jeffrey L. Ertel